IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LOUISE BLUE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil No.  12-cv-979-CJP |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Louise Blue, through counsel, seeks review of the final decisions of the Commissioner of Social Security which terminated her eligibility for Supplemental Security Income (SSI) and denied her application for Disability Insurance Benefits (DIB).[1]

A.   **Procedural History**

In 1993, Ms. Blue's application for SSI was approved on a finding that she met the requirements of Listing 12.05B based on her moderate mental retardation and personality disorder.   (Tr. 27, 420-428).   In September, 2009, the agency notified plaintiff that her benefits were being discontinued because the decision approving her application "was made in error."   (Tr. 61).   The discontinuation of benefits was affirmed on reconsideration.   While the discontinuation of SSI benefits was under

---

[1] This case was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c).   See, Doc. 28.

1

consideration, plaintiff applied for DIB based on quarters of coverage she accrued by working part-time while receiving SSI. The two claims were consolidated, and, after holding a hearing, ALJ Robert J. O'Blennis issued two written decisions on July 22, 2011. The first decision found that the prior decision awarding her SSI benefits had been made in error. (Tr. 680-692). The second decision denied her application for DIB. (Tr. 13-25). The Appeals Council denied review, and the July 22, 2011, decisions became the final agency decisions subject to judicial review. (Tr. 7). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

    **B.**    <u>**Issues Raised by Plaintiff**</u>

Plaintiff raises the following points:

    1.    The time period specified by the regulations for reopening a claim based on error rather than on medical improvement had expired, so the ALJ had no authority to discontinue plaintiff's SSI benefits in 2009.

    2.    If plaintiff's SSI benefits were wrongfully terminated, she was also entitled to DIB benefits because the definition of disability is the same for both kinds of benefits.

    **C.**    <u>**Applicable Legal Standards**</u>

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[2] For these purposes, "disabled" means the "inability to engage in

---

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. For all intents and purposes relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §423(d)(1)(A).**

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §423(d)(3).** However, limitations arising from alcoholism or drug use are excluded from consideration of whether a claimant is disabled. **42 U.S.C. §423(d)(2)(C); 20 C.F.R. §404.1535.**

"Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. **20 C.F.R. §§ 404.1572.**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age,

> education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

**Weatherbee v. Astrue, 649 F.3d 565, 568-569 (7th Cir. 2011).**

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. **20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).**

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Secretary at step five to show that the claimant can perform some other job. ***Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).** See also, ***Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001)**(Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

Once a claimant has been awarded SSI benefits, the agency undertakes a periodic

4

review of continued eligibility to receive benefits. This is referred to as a continuing disability review. 20 C.F.R. §§416.989. Social Security regulations set forth a sequential seven-step inquiry to determine whether a claimant is under a continuing disability. The seven steps are set forth in 20 C.F.R. §416.994(b)(5):

1. Does the beneficiary's impairment or combination of impairments meet or equal the Listings? If yes, disability is continued.

2. If the beneficiary's impairments do not meet or equal the Listings, has there been medical improvement? If yes, the sequential analysis proceeds to step three; if no, it proceeds to step four.

3. Is the medical improvement related to the beneficiary's ability to work? If yes, the sequential analysis proceeds to step five; if no, it proceeds to step four.

4. If there is no medical improvement, or if the medical improvement is not related to the beneficiary's ability to work, does one of the exceptions to medical improvement apply? If the exception does apply, the beneficiary is no longer disabled. If none of the exceptions apply, the sequential analysis continues.

5. If medical improvement is related to the ability to work, are all current impairments severe in combination? If not, the beneficiary is no longer disabled.

6. If the impairments are severe, the Commissioner determines the beneficiary's residual functional capacity (RFC), and considers whether he can do his past work. If the beneficiary can do his past work, disability will be found to have ended.

7. If the beneficiary cannot do his past work, the Commissioner decides whether he can do other work given his RFC, and considering his age, education, and past work experience. If the beneficiary can do other work, he is no longer disabled; if not, disability is continued.

This Court reviews the Commissioner's decision to ensure that the decision is

supported by substantial evidence and that no mistakes of law were made. The scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . ." **42 U.S.C. § 405(g)**. Thus, this Court must determine not whether Ms. Blue was, in fact, disabled during the relevant time period, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. **See,** *Books v. Chater*, **91 F.3d 972, 977-78 (7th Cir. 1996)** (citing *Diaz v. Chater*, **55 F.3d 300, 306 (7th Cir. 1995))**. This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, **402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, **103 F.3d 1384, 1390 (7th Cir. 1997)**. However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, **597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

    D.    <u>The Decisions of the ALJ</u>

ALJ O'Blennis applied 20 C.F.R. §416.994 to determine whether plaintiff continued to be eligible to receive SSI benefits. He noted that she had been found disabled based on the results of IQ testing administered by consultative examiner

6

Donald T. Cross, Ph.D.   Dr. Cross stated in his report that the results of the testing were valid, and he diagnosed moderate mental retardation.   ALJ O'Blennis determined that substantial evidence established that she was not, in fact, mentally retarded, and that the 1993 decision awarding her benefits was made in error.   Continuing on with the seven-step sequential analysis, he found that plaintiff had severe impairments of glaucoma, hypothyroidism, history of right rotator cuff surgery, arthritis of the hands, breathing problems, depression, anxiety and substance abuse.   He found that these impairments did not meet or equal a listed impairment.   The ALJ found that Ms. Blue had the residual functional capacity to perform work at the medium exertional level, with limitations.   Based on evidence from a vocational expert, he concluded that plaintiff was able to do jobs which exist in significant numbers in the regional and local economies. (Tr. 680-692).

In his decision on plaintiff's 2010 application for DIB, ALJ O'Blennis followed the five-step analytical framework described above.   He determined that Ms. Blue had not been engaged in substantial gainful activity and that she was insured for DIB through March 31, 2011.   The rest of the analysis mirrored the findings in the decision on termination of SSI benefits.   (Tr. 13-25).

  E. **<u>The Evidentiary Record</u>**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.   The following summary of the record is directed to the points raised by plaintiff.

7

1.     Records Related to Application for SSI (1992)

Louise Blue was born in September, 1963. She applied for SSI in December, 1992, and July, 1993. (Tr. 169-172, 173-185). In the first application, she said she was disabled because of drugs and alcohol. In the second application, the basis for disability was mental limitations.

In a Disability Report, plaintiff said that she was disabled because of "illiterate, problems with back, addicted to alcohol and cocaine." (Tr. 227).

Max Givon, Ph.D., performed a consultative psychological exam on March 13, 1993. Ms. Blue chain-smoked throughout the exam and turned her chair so that she was facing away from Dr. Givon. He described her behavior as noteworthy for "very poor cooperation, evasiveness and vagueness." Her responses to mental status questions were "often obviously contrived to the point of absurdity." Dr. Givon attempted to administer IQ testing, but, due to plaintiff's contrived responses, the test did not yield valid scores. His impression was that Ms. Blue was "not retarded despite her attempts to present herself as extremely limited intellectually." (Tr. 407-410).

A second consultative psychological exam was performed by Donald T. Cross, Ph.D., in June, 1993. He administered the Wechsler Adult Intelligence Scale (WAIS-R). Dr. Cross noted that Ms. Blue was a twenty-nine year old single woman who was cocaine and alcohol dependent. She had recently completed a twenty-eight day inpatient treatment program for chemical dependence. She had a ninth grade education. She had four children, ranging in age from one to thirteen years old. (Tr.

8

411-414).   Ms. Blue's scores on the WAIS-R were Full Scale Score of 53, Verbal Scale of 61 and Performance Scale of 52.   These scores put her in the moderate mental retardation range of intellectual functioning.   Dr. Cross stated that this was an "accurate estimate of Ms. Blue's current level of intellectual functioning."   His Axis I diagnosis was polysubstance dependence.   His Axis II diagnosis was personality disorder, anti-social.   (Tr. 415-418).

A state agency consultant completed a Psychiatric Review Technique form in which he indicated that Ms. Blue met the requirements of Listing 12.05 B, i.e., a "valid verbal, performance, or full scale I.Q. of 59 or less."   She also had a personality disorder and a substance addiction disorder.   (Tr. 420- 428).

In July, 1993, Ms. Blue's application for SSI was approved for the reason that she met Listing 12.05B.   (Tr. 27, 44).

    **2.**    **Records Related to Cessation of SSI Benefits (2009)**

In September, 2009, the agency notified Ms. Blue that it had determined that she was no longer entitled to SSI benefits because the 1992 decision finding her disabled was made in error.   (Tr. 61).

After holding a hearing, ALJ O'Blennis issued a written decision finding her no longer entitled to receive SSI benefits because the prior decision finding her disabled had been made in error, citing 20 C.F.R. §416.994(b)(3)(iv)(A).   (Tr. 682).

    **3.**    **Records Related to Application for DIB (2010)**

While her request for a hearing on the cessation of SSI benefits was pending,

9

plaintiff applied for DIB. She alleged that she had been disabled since November 1, 1992. (Tr. 190-191).

Based upon quarters of coverage earned from working while she was receiving SSI benefits, plaintiff was insured for DIB through March 31, 2011. (Tr. 204). In 2001, plaintiff earned $11,459.94. In 2007, she earned $7,085.46. In 2008, she earned $6,807.00. (Tr. 205).

Plaintiff stated in a Disability Report that she was unable to work because of glaucoma. (Tr. 240). She had worked at various jobs through a temp agency from 1999 through May, 2007. From May to October, 2007, she worked as a housekeeper in a hotel. (Tr. 241). She completed the 9th grade and had not been in special education classes. (Tr. 244).

### 4. Evidentiary Hearing

ALJ O'Blennis continued the evidentiary hearing from the first setting so that plaintiff could find a lawyer. (Tr. 631-636). Plaintiff appeared without an attorney on May 26, 2011, and indicated that she wanted to proceed. A friend, James Moore, was with her. (Tr. 640-641).

Ms. Blue was 47 years old at the time of the hearing. She lived with her 19 year-old daughter. (Tr. 642). She left school in the 10th grade. (Tr. 646).

Plaintiff worked at a number of jobs while on SSI. She worked as a packer on an assembly line, a hotel housekeeper, and assembler of harnesses for cars. (Tr. 646-649). She said that she left the last job because she "lost the grip" in her hands. (Tr. 650).

Ms. Blue was in a drug and alcohol treatment program at the time of the hearing. This was the sixth time that she was going through a rehab program. (Tr. 651-653).

Plaintiff testified that she had pain in her right shoulder and that she had her rotator cuff "replaced" about four or five years earlier. She said that she had problems with her hands. She could not lift anything heavier than a broom. Her mother and her daughter helped her with housework. Before she entered the rehab program, she spent her time watching television. She used alcohol and crack cocaine. She said that she could write but could not read. (Tr. 653-664).

Mr. Moore testified that plaintiff had anxiety attacks and sometimes did not understand things. (Tr. 665).

A vocational expert (VE) also testified. The ALJ asked him to assume a person who could lift 25 pounds frequently and 50 pounds occasionally, sit for a total of 6 out of 8 hours, stand and/or walk for 6 out of 8 hours, and was limited to only occasional postural activities, including crouching and crawling, with no climbing of ladders, ropes and scaffolds and no work at unprotected heights or with dangerous machinery. She should avoid overhead reaching with the right arm and forceful pushing and pulling with the right arm. She was further limited to simple, repetitive work with no close interaction with the general public. The VE testified that this person could do a variety of unskilled jobs at the light to medium exertional level, such as assembler, cleaner, packer and wrapper. If she were limited to lifting only 10 pounds and walking/standing for only 2 hours a day, she would be able to do sedentary jobs such as

11

assembler and product inspector.   All of the jobs existed in significant numbers.   (Tr. 669- 671).

     **5.**    **Medical Records**

Ms. Blue saw her primary care physician, Dr. Hussain, in 2007 for hypothyroidism, musculoskeletal pain, sore throat and earache.   (Tr. 462-463).

In March, 2008, Ms. Blue saw Dr. Hussain for medical clearance to enter a substance abuse rehab program.   He noted that she had relapsed on alcohol and cocaine after having been clean for four years.   He indicated that she had hypothyroidism and was not compliant with treatment.   (Tr. 461).

Harry J. Deppe, Ph.D., performed a consultative psychological exam on June 19, 2008.   Plaintiff told him that she was seeking disability due to glaucoma.   He felt she was functioning at "an approximate average level of intellectual ability."   (Tr. 520). Her fund of general knowledge was good.   Her memory for recent and more remote events was good.   Immediate memory was fair.   Her abstract reasoning skills were good, and judgment and insight were adequate.   The Axis I diagnosis was polysubstance dependence.   The Axis III diagnosis was glaucoma.   (Tr. 519-522).

An eye doctor examined plaintiff on June 26, 2008, and concluded that she had suspected glaucoma.   Her uncorrected vision was 20/40 in both eyes.   Tension in the right eye was 11mm, and tension in the left eye was 12 mm.   (Tr. 523-524).

In October, 2008, she had pain and muscle spasm in her shoulders.   (Tr. 492).

Dr. Adrian Feinerman examined plaintiff in August, 2009.   He found no

abnormalities except that she had an enlarged thyroid.  Neurological and motor examinations were normal.  She had no joint redness, swelling, heat or thickening.  Grip strength was strong and equal.  Muscle strength was normal throughout.  Fine and gross manipulation were normal.  Straight leg raising was negative.  She was able to lift, carry and handle objects without difficulty.  She had a full range of motion.  (Tr. 527-536).

In January, 2011, Ms. Blue went to the emergency room complaining of epigastric pain, back pain and right flank pain.  She denied any history of alcohol or drug use.  On exam, she had a full range of motion of the extremities, full muscle strength, intact sensation and a normal gait.  (Tr. 570).  The diagnosis was epigastric pain and GERD.  (Tr. 576).

Plaintiff was admitted to the hospital though the emergency room for chest pains and generalized weakness in April, 2011.  She admitted to being noncompliant with her medications and to using alcohol and cocaine.  She had a normal echocardiogram and stress test, and was discharged.  (Tr. 581-587).

In May, 2011, x-rays of plaintiff's hands showed early arthritic changes.  (Tr. 579-580).

In June, 2011, Dr. Hussain's office completed a medical assessment form for the SMARTS substance abuse treatment program.  The form states that the doctor treated her for hypothyroidism, hypertension, urinary incontinence, GERD, anxiety and muscle spasms/pain.  She was noted to be stable and able to attend a residential drug

treatment program. (Tr. 628).

**6.    State Agency Consultant's RFC Assessment**

A state agency consultant completed a Psychiatric Review Technique form in September, 2009. He indicated that Ms. Blue did not have a severe mental impairment. He wrote that she was functioning well above the level of a person with a full-scale IQ of 53. (Tr. 541-553).

A state agency consultant assessed plaintiff's physical RFC based on a review of the records in September, 2009. He opined that plaintiff was able to do work at the medium exertional level, limited to only frequent, i.e., less than two-thirds of the day, postural activities. He noted that plaintiff had been diagnosed with glaucoma, but she had nonsevere visual acuity deficit and no evidence of visual field impairment. (Tr. 554-561).

**F.    Analysis**

The Commissioner undertakes periodic review of whether an SSI recipient is entitled to continue to receive disability benefits. This is referred to a continuing disability review. See, 20 C.F.R. §416.989.

Congress has authorized the Commissioner to terminate disability benefits where substantial evidence shows that the recipient has had medical improvement or "a prior determination was in error." 42 U.S.C. §423(f)(4).

The determination that a prior decision awarding benefits was made in error is one of so-called the "exceptions to medical improvement," meaning that "disability can

be found to have ended even though medical improvement has not occurred." 20 C.F.R. §416.994(b)(3).

The regulations place a time limit on the Commissioner's ability to terminate benefits because the prior decision was made in error.   The exception for error can only be applied to past decisions within the timeframes for reopening a prior decision.   20 C.F.R. §416.994(b)(3)(iv)(D).   The timeframes for reopening a prior decision are set forth in 20 C.F.R. §416.1488.   A prior decision can be reopened only (a) within 12 months, for any reason, (b) within 24 months for good cause, or (c) at any time if the initial decision was obtained by fraud or similar fault.

The initial decision awarding Ms. Blue benefits was made in 1993.   The Commissioner does not take the position that the initial decision was obtained by fraud or similar fault.   Therefore, she concedes, as she must, that the ALJ erred in applying the exception for error in this case.   However, she argues that any such error was harmless. See, Doc. 24, pp. 13-14.

The doctrine of harmless error, as applied to judicial review of administrative decisions, means that "If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time."   *Spiva v. Astrue*, **628 F.3d 346, 353 (7th Cir. 2010).**

Here, it can be predicted with great confidence that the agency would reach the same decision on remand.

Although ALJ O'Blennis applied an exception to medical improvement, he, in effect, made a determination that medical improvement had occurred because he considered whether plaintiff's condition met a listed impairment at the time of his July, 2011, decisions. The regulation on exceptions to medical improvement must be read in conjunction with the provision on continuing review where the prior decision found disability because a Listing was met. In such a case,

> If our most recent favorable decision was based on the fact that your impairment(s) at the time met or equaled the severity contemplated by the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, an assessment of your residual functional capacity would not have been made. If medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make our most recent favorable decision, we will find that the medical improvement was related to your ability to work.

20 C.F.R. §416.994(b)(2)(iv)(A).

The ALJ determined that plaintiff's condition did not meet or equal a Listing in 2011. (Tr. 19-20, 683-685). Plaintiff has not argued this determination was erroneous. In fact, substantial evidence supports the finding that plaintiff's mental impairments did not meet or equal a Listing in 2011, including the Listing for mental retardation. First, as the ALJ noted, plaintiff claimed in 2009 that she was disabled because of conditions other than mental retardation. (Tr. 14-15, 685-686). Further, Dr. Deppe's examination did not in any way suggest that she was mentally retarded. Dr. Deppe concluded that she was functioning at "an approximate average level of intellectual ability." (Tr. 520). The ALJ noted that Dr. Deppe found that plaintiff had no difficulty staying on task, was

16

relevant and coherent, and her memory was fair to good. Dr. Deppe diagnosed polysubstance dependence and opined that she had fair ability to perform work-related activities. (Tr. 16, 687). The ALJ also cited Dr. Feinerman's observation that plaintiff was oriented with normal memory and concentration. (Tr. 17, 688). Further, a state agency consultant opined in September, 2009, that Ms. Blue did not have a severe mental impairment and that she was functioning well above the level of a person with a full-scale IQ of 53. (Tr. 541-553). Lastly, no health care provider or lay witness, not even plaintiff herself, described plaintiff as mentally retarded in connection with the continuing disability review or the application for DIB. Therefore, the Court concludes that the record overwhelmingly supports the ALJ's finding that Ms. Blue's mental impairments did not meet or equal a Listing in 2011.

The fact that plaintiff did not meet or equal a Listing in 2011 is deemed to be a finding that medical improvement related to ability to work has occurred, per 20 C.F.R. §416.994(b)(2)(iv)(A), quoted above.

The ALJ performed the continuing disability review sequential analysis through steps 5, 6 and 7. His analysis mirrors his analysis on the five-step sequential analysis on plaintiff's DIB claim. He determined that she had severe impairments which did not meet or equal a Listing, he assessed her RFC, and he determined that she was able to do work which exists in significant numbers in the economy. Plaintiff does not argue that his findings at any step along the way were erroneous. Her only argument with respect to the DIB application is that the decision to terminate her SSI benefits was erroneous

and the definition of disability is the same for DIB and SSI.

The ALJ's error in applying the exception to medical improvement beyond the time limits set forth in the regulation is harmless in the circumstances of this case. The record overwhelmingly supports the ALJ's finding that Ms. Blue did not meet or equal the requirements of the Listing on mental retardation in 2011. By definition, under 20 C.F.R. §416.994(b)(2)(iv)(A), if she no longer meets a Listing that she previously met, medical improvement has occurred.

Plaintiff filed a reply brief in which she restates her timeliness argument, but she does not identify any error with respect to the finding that she did not meet or equal the requirements of the Listing on mental retardation in 2011. Her argument ignores 20 C.F.R. §416.994(b)(2)(iv)(A). The Court can predict with great confidence that any reasonable ALJ would reach the same decision on remand. "It would serve no purpose to remand this case to the ALJ for a statement of the obvious." *McKinzey v. Astrue*, **641 F.3d 884, 892 (7th Cir. 2011).**

### G.    Conclusion

The Commissioner's final decisions terminating Louise Blue's SSI benefits and denying her application for DIB are **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATED:   June 20, 2013.**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**